EARL W. CANADAY, Appellee, v. IDA MAY BAYSINGER, Appellant.

**WILLS:   Life Estate or Fee—Construction.**   The following will
1   grants to the wife a life estate only: "I bequeath to my wife (certain named lands). I further wish her to have (certain named lands), and after my wife's death it is my wish that . . . the land be sold and the money be equally divided between my five heirs."

**WILLS:   Limitations—Consistent and Inconsistent—Effect.**   Limita-
2   tion on a bequest not inconsistent therewith must be given full force and effect. *Held,* the above will contains no limitation inconsistent with the bequest to the wife.

**WILLS:** Construction—Life Estate or Fee—Failure to Specify Fee.
3  In determining whether a devisee takes a life estate or a fee,
it is material to notice (a) whether the testator has specified the
particular estate which the devisee is to take, and (b) whether
the power of alienation has been expressly or impliedly granted.

*Appeal from Warren District Court.*—HON. J. H. APPLE-
GATE, Judge.

MONDAY, MAY 17, 1915.

PROCEEDINGS brought in partition and for the construc-
tion of a will.—*Affirmed.*

*Berry & Watson,* for appellant.

*F. P. Henderson,* for appellee.

GAYNOR, J.—This is an action brought by one of the
heirs of David Canaday, deceased, for the partition and sale
of certain real estate, and for the purpose of establishing and
determining the respective rights of each in the same, and
for a decree quieting the title of plaintiff therein, against the
claims of Mary, Enos and Millie Swafford, Ida May Bay-
singer, and Wm. Baysinger.

David Canaday died in March, 1879, and left a will
which is hereinafter set out. His widow, Eliza Canaday,
survived him, and died in March, 1913. The appellant, Ida
May Baysinger, was a daughter of David and Eliza Canaday.
The petition charges that by the terms of the will, the widow,
Eliza, took only a life estate in the premises mentioned in
the will; that, after the death of David Canaday, and before
the death of Eliza, Ida May Baysinger, Enos and Mary Swaf-
ford, by quit claim deed, conveyed all their right, title and
interest in the premises to George G. Canaday, a son of David
Canaday; that George Canaday died on the 31st day of
March, 1913, and the plaintiff is his only heir at law.

Ida May Baysinger, the appellant herein, was a daughter
of David and Eliza Canaday. She claims an interest in the

land as an heir of Eliza. She bases this claim on the theory that the will gave to Eliza an absolute title to the land; that the quit claim deed made by her to plaintiff's ancestor conveyed to him no title because she then had none to convey; that as the heir of Eliza, she is entitled to it. She demurred to plaintiff's petition, and the demurrer places in issue the allegation that the widow took only a life estate. The issue, therefore, to be determined herein, and which is decisive of the controversy, is, Did Eliza Canaday take a fee simple title in the premises under the will, or did she take only a life estate? If she took only a life estate, the fee vested in the heirs of David Canaday, subject to the life estate, and vested immediately upon the probate of the will, which related back to the time of the death of David. Ida May Baysinger's quit claim deed would therefore convey her interest in the fee, subject to the life estate. If Eliza took a fee under the deed, then Ida May Baysinger acquired nothing until the death of Eliza, and whatever rights she acquired would be as the heir of Eliza Canaday, and this right having come to her after the execution of the quit claim did not inure to the benefit of her grantor in the quit claim.

Ida May Baysinger alone challenged the allegation of the petition by demurrer. Her demurrer was overruled, and a decree entered quieting the title in the plaintiff as against her. From this ruling she appealed.

1. WILLS: life estate or fee: construction.

The will, which we are required to construe and by which the rights of these parties must be judged and determined, is as follows:

"I, David Canaday, of Richland Township, Warren County, Iowa, I am of feeble health but of good mind. Do this day make this my last will and testament, that is to say after my death, I wish my funeral expenses and debts all paid by selling my personal property and one piece of land, viz., 23½ acres in the south end of the Northwest quarter of the Northwest quarter of Section Seven, Township Seventy-seven,

North of Range Twenty-two, west of the 5th P. M. I bequeath to Eliza Canaday, my wife, the piece of land or rather the place that we live on, beginning at the Southeast corner of Section Twelve, in Township Seventy-seven, North of Range Twenty-three, west of the 5th P. M. and running south 60 rods; thence west eighty rods to a starting point; thence North 44 rods; thence West 54½ rods; thence South 44 rods; thence East to place of beginning, containing 15 acres more or less. I also wish her to have a choice milch cow. I further wish her to have the west half of the southeast quarter of section Twelve, Twp. 77, North of Range 23, W. also commencing at the Southeast Corner of the West Half of the Southeast Quarter of Section Twelve, Twp. 77; Range 23 W. thence West 53⅔ rods; thence fifteen rods south; thence 53⅔ rods east; thence fifteen rods north to the place of beginning. Section 13, Tp. 77, Range 23 west.

"I also wish my wife to have all the household and kitchen except two beds and bedding for my daughter, Ida May, after my wife's death it is my wish that the remainder of the household and kitchen furniture be sold and the land also to (be) sold and the money to be equally divided between my five heirs."

The action of the court in overruling the demurrer of Ida May Baysinger was predicated upon the theory that Eliza Canaday took only a life estate in the land mentioned in the will, and that the fee vested in the heirs of David, subject to this life estate. We are asked to construe this will and say whether or not Eliza Canaday was, by the terms of the will, vested with the fee, or whether, under the will, she took only a life estate.

It is well settled in this state now, and is in other states where the question has been before the courts, that the intention of the testator is controlling. At the time of the making of the will, he is the owner of the property, and has a right under the law to make such disposition of it as he thinks

best and desires. The right to dispose of it as he sees fit and to whom he sees fit, has no limitation except that by a will he cannot dispose of those rights given by statute to the widow, and providing the disposition is not immoral or against public policy.

None of these questions are involved here. There is no question, from a reading of this will, that the testator intended by the will to dispose of all his property to someone mentioned in the will. We are only concerned with the disposition made of the real estate. As to this, he intended to and did dispose of all to take effect upon his death. The question is, Did the widow take a limited estate with devise over to his heirs? The contention of the plaintiff is that she took a limited estate, limited to the duration of her life, and that the remainder over passed to the heirs of David Canaday. As has been frequently said, the intention of the testator is the polar star in the interpretation of a will. The will may be ever so inartistically drawn: it may be even ungrammatical in its terms, yet if, from the whole will, taking all the parts together, and giving them full consideration, the court can determine what the intent of the testator is, that must prevail. Of course, there are certain recognized canons of construction which have their foundation in reason and experience. These the courts must recognize and enforce, not for the purpose, however, of defeating the intent of the testator, but for the purpose of aiding in the ascertainment of the intent. Thus, where a clear devise is made to one party without limitation, giving to him the full fee with power of alienation, any provision in the will subsequently made, which, if recognized, defeats that clear and clearly expressed intent, cannot prevail. It is said to be repugnant to the first clear and unequivocal expression of the mind of the testator. Some courts have said that there are some things that even a testator cannot do; that is, he cannot cause a thing to exist and not exist at the same time, and in the same instrument. In the physical world, we are told that two bodies cannot

occupy the same space at the same time. Where the words create, in the first place, an estate in fee in one and vest him with full title and power of alienation, any later expression which would destroy, nullify, or expunge that which has been done must be held ineffectual because they both cannot stand. A thing cannot be and not be at the same time.

The rule which has been adopted in the construction of wills is that the first taker to whom the testator has given the estate in fee, with full power of alienation, must be considered the absolute owner, as against any later provision of the will which would destroy or nullify the first. The limitation over is held void for repugnancy.

2. WILLS: limitations: consistent and inconsistent: effect.

It has been frequently held that the written instrument must be considered as a whole; that the order in which the will of the testator is paragraphed is not controlling, except as above indicated, to wit, where the latter clause is repugnant to the preceding clause, and, if given force, destroys that which precedes. So it follows that, unless the succeeding clauses are necessarily repugnant and destroy that which precedes, every part must be given full force in determining the intent of the testator.

As said in *Law v. Douglass*, 107 Iowa 606, "Unless the provisions of the will are necessarily repugnant, there is no reason why the intention of the testator should not govern."

We might add that the intention of the testator must always govern; but where the testator has made two provisions in his will, one of which is repugnant to the other, both cannot stand, and the presumption is that the first provision expresses the will of the testator, and the second, being repugnant to that, must fall. So the court looks to the first provision for the intent of the testator, and rejects the second provision. This is done under the assumption that the testator knew the rules governing the construction of wills, and knew that, under the canons of construction, the first pro-

vision must be held to have expressed his intent, and that the second provision is nugatory, being inconsistent with and repugnant to the first provision. So, in either event, the intent of the testator must prevail, but that intent is ascertained from the whole will, subject, however, to this recognized canon of construction.

This brings us to the consideration of the will itself. So far as this record shows, the will is all in one paragraph.

3. WILLS: construction: life estate or fee: failure to specify fee.

The first part of the will provides: "I bequeath to Eliza Canaday, my wife, the piece of land, etc. . . . I further wish her to have certain land, etc. . . . After my wife's death, it is my wish that the land be sold and the money be equally divided between my five heirs."

The bequest to his wife creates no particular estate in the wife by its terms. There is no provision that she takes a fee or an absolute title, or that she is given the power of alienation. There is nothing to indicate the estate intended to be invested in the wife. Without further limitation upon this bequest, or rather devise, it might be construed into an absolute devise; but, with a limitation which is not inconsistent with the estate created, we are of the opinion that the testator intended, by what he calls a bequest or a wish, to give to the wife only such an estate as would terminate upon her death, and that upon her death the land be sold and be equally divided between the heirs.

Where the will is capable of such a construction as gives to all the parts of the will the full force which the language imports, it must be so construed. Where the testator in the devising clause to the first taker has not so designated the estate intended to be devised that the remainder over would be repugnant to the devise, then both would be permitted to stand. To hold that the first part of the will gave to the wife an absolute fee, with power of alienation, would be to add to the provisions of the will itself, and would, of course, render the latter clause repugnant to such a devise; but to

hold that the first part of the will, not having designated the particular estate intended to be devised, and not having by express provision indicated the estate intended to be created in the wife, from which power of alienation might be inferred, and not having by express words or necessary implication given to her the power of alienation,—the devise of the remainder over is not inconsistent with such provision, and therefore both may stand and each be in force.

The estate devised to the wife is indefinite and uncertain. Its scope and limitation are not fixed in the will. If the testator intended to give her a fee with power of alienation, he has not said so in the will. In the last clause of the will, he has indicated his intent in making the devise, to wit, that upon her death it should be sold and the proceeds divided among his heirs. This is a clear expression of an intent on his part to limit the estate vested in his wife to a life estate. There could be no remainder for sale and disposition at her death, if the construction contended for by the defendant were to prevail. Therefore, we would be compelled to enlarge the provisions of the will in favor of the wife, and to give it a larger scope than the testator has given it in the will itself, and we would be compelled in so doing to render nugatory the clear and unambiguous expression of testator's intent that upon her death the land should be sold and divided among his heirs. To hold that she had only such an estate as would continue during her life and such as would terminate upon her death gives to the last clause, directing the sale and division among his heirs, its full force. This gives to all the terms of the will their full force and effect, without destroying either, neither provision being necessarily inconsistent with the other.

As supporting these conclusions, see *Law v. Douglass,* 107 Iowa 606; *Iimas v. Neidt,* 101 Iowa 348; *Richards v. Richards,* 155 Iowa 394; *McTigue v. Ettienne,* 155 Iowa 450; *Boekemeier v. Boekemeier,* 157 Iowa 372; *Elberts v. Elberts,* 159 Iowa 332; *In re McRae* (Mich.), 146 N. W. 265; *In re*

*Gray's Estate* (N. D.), 146 N. W. 722; *Stender v. Stender* (Mich.), 148 N. W. 255.

Under these decisions we think the demurrer was properly overruled. The case is, therefore,—*Affirmed.*

DEEMER, C. J., LADD and SALINGER, JJ., concur.